IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Keith Ansley, | Case No. 1:17-cv-271 |
| Plaintiff, | |
| | Judge Susan J. Dlott |
| v. | |
| | Order Granting in Part and Denying in Part Defendants' Motion for Judgment on the Pleadings |
| Robert F. Cooke, OD, *et al.*, | |
| Defendants. | |

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings (Doc. 7). Plaintiff Keith Ansley is a former employee of and minority shareholder in Diversified Ophthalmics, Inc. ("Diversified"), a closely held corporation. He alleges that Defendants Ronald F. Cooke, O.D., and George V. Landon, OD, the majority shareholders in Diversified, fraudulently induced him to sell back his shares in Diversified so that he would not partake in the proceeds of the sale of Diversified to another company. Defendants argue that all of Ansley's claims are barred by a contractual release he signed upon his termination from employment with Diversified and that some of his claims fail on separate grounds as well. For the reasons that follow, the Court concludes that most of Ansley's claims fall outside the scope of the contractual release, but that his tortious interference and civil conspiracy claims fail on separate grounds. The Court will **GRANT IN PART AND DENY IN PART** the Motion for Judgment on the Pleadings.

I.     BACKGROUND

The facts herein are derived from the well-pleaded allegations of the Complaint except where specifically noted otherwise. Diversified is a supplier of eyecare services, practices, and products. Dr. Cooke is the president and CEO of Diversified and owns more than 50% of its

1

shares. Dr. Landon is the secretary and treasurer of Diversified and owns more than 20% of its shares.

Diversified hired Ansley as its vice-president of operations on May 7, 2012. Ansley alleges that his initial compensation package included a $150,000 annual salary plus a guarantee to receive 2% of the proceeds in the event of a sale of Diversified. However, his written Employment Agreement dated May 4, 2012 stated that Ansley's proceeds in the sale of Diversified grew annually from 0.25% to 1% of the sale proceeds from years two through five of his employment. (Doc. 4-1 at PageID 63.) Regardless, in 2014 Defendants told Ansley that Diversified was not doing well financially. His Employment Agreement was amended on July 21, 2014 to eliminate the proceeds guarantee provision, but give him the right to purchase shares in Diversified. (*Id.* at PageID 65.)

In January 2015, Ansley purchased sixty shares of Diversified stock, 1% of the corporation, for approximately $86,000. Defendants told Ansley he could purchase another 1% of Diversified in 2016.

During Ansley's tenure with Diversified, Defendants engaged in activities to increase Diversified's value and market it for sale, merger, or acquisition. Diversified retained HPC Puckett & Company, a mergers and acquisition advisory firm, and engaged in negotiations with a competitor for potential purchase. Ansley alleged that Defendants failed to disclose to him all known or knowable material facts regarding their efforts to increase Diversified's value and its potential for merger, sale, or acquisition.

In November 2015, Defendants told Ansley that Diversified was eliminating his position and firing him effective December 4, 2015. Ansley alleges that they also told him that only employees of Diversified could own corporate shares and that he would have to sell back his

2

shares. On November 20, 2015, Dr. Cooke, as President and CEO of Diversified, and Ansley signed a Separation & Transitional Agreement ("Separation Agreement"). (Doc. 4-2 at PageID 67.) In the Separation Agreement, the parties agreed that Diversified would buy back Ansley's sixty shares of stock on or before December 4, 2015 at a price of $1,551 per share for a sum total of $93,060. (*Id.*) Diversified agreed to continue Ansley's benefits, including health insurance, until December 31, 2015 and to pay Ansley two weeks additional salary if certain operational goals were met. (*Id.*) Finally, Ansley agreed to a Release and Waiver which stated as follows:

> **In return for the items listed above, I herby[*sic*] waive, release, and hold harmless Diversified Ophthalmics, Inc., and its directors, officers, agents and employees ("Diversified Ophthalmics"), from any claims, suits or liabilities arising from or by the reason of my employment or elimination of employment from [*sic*].** I further agree to refrain from suing Diversified Ophthalmics, its directors, officers, agents and employees with respect to any such matters, and if an administrative claim is filed by me or anyone else with the equal Employment Opportunity Commission or similar state agency, I hereby expressly waive the right to receive any monetary damages as a result of such claim. I understand that this general release and waiver specifically releases, among other claims, any claims or rights I may have under any federal, state, or local laws pertaining to employment discrimination, breach of contract and/or wrongful termination, including but not limited to Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, and the Fair Labor Standards Act. I further understand that this agreement does not cover claims, [*sic*] which might arise after I sign it.

(*Id.* at PageID 68 (emphasis added)).

Ansley alleges the sell-back price of $1,551 per share was less than the true market value of his sixty shares at that time given Defendants' undisclosed efforts to prepare Diversified for sale. Approximately ten months later, on or about October 24, 2016, Diversified was acquired by ABB Optical Group for a value of $8,219 per share. Ansley's sixty shares would have been worth $493,140 if he had been a shareholder at the time of the merger. Ansley alleges that he was terminated as part of a scheme to deny him the opportunity to benefit from the sale of Diversified as a minority shareholder.

B.  **Procedural Posture**

Ansley initiated this suit against Dr. Cooke and Dr. Landon in the Hamilton County, Ohio Common Pleas Court on March 17, 2017. (Doc. 3.) He asserts the following causes of action:

1. Breach of fiduciary duty;
2. Fraud;
3. Fraud in the inducement;
4. Tortious interference with a business relationship and prospective advantage;
5. Promissory estoppel;
6. Negligent misrepresentation;
7. Unjust enrichment;
8. Conversion; and
9. Civil conspiracy.

(Doc. 3 at PageID 51–54.)[1]

Defendants removed the action to the Southern District of Ohio on April 24, 2017 and then filed an Answer and Counterclaim on May 1, 2017. (Docs. 1, 4.) Their counterclaim seeks a declaratory judgment that the Separation Agreement, with the Release and Waiver, acts as a bar to Ansley's claims. Finally, on May 18, 2017, Defendants filed the instant Motion for Judgment on the Pleadings. Ansley opposes the motion, and it is ripe for adjudication.

II. **LEGAL STANDARD FOR RULE 12(c) MOTION**

Rule 12(c) permits a party to move for judgment on the pleadings. The legal standard for adjudicating a Rule 12(c) motion is the same as that for adjudicating a Rule 12(b)(6) motion. *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007). Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a dismissal motion, a complaint

---

[1] Ansley also purports to assert claims for declaratory judgment and for punitive damages, but the Court understands these to be requests for particular types of relief.

4

must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A district court examining the sufficiency of a complaint must accept the well-pleaded allegations of the complaint as true. *Id.*; *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014).

## III. ANALYSIS

### A. Effect of the Release and Waiver on all Claims

Defendants move for judgment on several grounds, the first of which that Ansley's claims are barred by the Release and Waiver in the Separation Agreement. "A release of a cause of action for damages is ordinarily an absolute bar to a later action on any claim encompassed within the release." *Haller v. Borror Corp.*, 50 Ohio St. 3d 10, 552 N.E.2d 207, 210 (1990); *see also Waste Mgmt., Inc. v. Danis Indus. Corp.*, No. C-3-00-256, 2004 WL 5345389, at *8 (S.D. Ohio Feb. 24, 2004) ("It is settled under the law of Ohio that a release is an absolute bar to a later asserted claim encompassed in the scope of the release."). Contractual releases are strictly constructed. *See e.g.*, *Albrecht v. Marinas Int'l Consol., L.P.*, No. 25246, 2010 WL 4866289, at *4 (Ohio App. 9th Dist. Nov. 24, 2010) ("[C]lauses limiting the liability of the drafter are ordinarily to be strictly construed.") (quoting *Glaspell v. Ohio Edison Co.*, 29 Ohio St. 3d 44, 47, 505 N.E.2d 264 (1987)); *see also Jacob v. Grant Life Choices Fitness Ctr.*, No. 95APE12-1633, 1996 WL 303677, at *4 (Ohio App. June 4, 1996) ("Contracts purporting to grant immunity from

5

liability, or a limitation of liability, must be strictly construed and limited to intended beneficiaries."). The parties dispute whether the Release and Waiver here is broad enough to bar Ansley's claims.

Defendants assert Ansley's claims are encompassed within the scope of the Release and Waiver because (1) the claims "aris[e] from or by the reason of [his] employment or elimination of employment[,]" (2) the claims involve the shares of stock that Ansley sold back to Diversified as set forth in the Release and Waiver, and (3) Dr. Cooke and Dr. Landon are "officers, agents, and employees" of Diversified. (Doc. 4-2 at PageID 68.)

In rebuttal, Ansley argues that the Release and Waiver does not encompass the majority of Ansley's claims, and the Court agrees. Ansley appears to concede that the Release and Waiver releases Dr. Cooke and Dr. Landon as third-party beneficiaries to the Separation Agreement to the extent that they are sued in their capacities as the officers of Diversified. Defendants acted as corporate officers when they terminated Ansley's employment. However, Defendants also are the majority shareholders of Diversified. The Release and Waiver does not release Diversified's owners or shareholders. (Doc. 4-2 at PageID 68 (releasing Diversified's "directors, officers, agents and employees" only)). Ohio law recognizes claims for breach of fiduciary duty by minority shareholders in a close corporation against the majority shareholders when the majority shareholders have used "control of the corporation to their own advantage without providing minority shareholders with an equal opportunity to benefit." *Crosby v. Beam*, 47 Ohio St. 3d 10, 552 N.E.2d 207, 221 (1989).

The Release and Waiver expressly encompasses only claims "arising from or by the reason of [Ansley's] employment or elimination of employment" including claims "pertaining to employment discrimination, breach of contract, and/or wrongful termination." (Doc. 4-2 at

6

PageID 68.)  This is consistent with the fact that the subject matter of the Separation Agreement is the end of Ansley's employment as expressed in the following clauses:

- Section 1:  "Your position with [Diversified] is being eliminated . . . ."

- Section 3:  "During the term of your employment, you have had access to and become familiar with various trade secrets and other confidential information of Diversified."

- Section 6:  "The Vice President of Human Resources . . . is the only person authorized to respond to requests for employment information, including but not limited to the employee's period of employment, final position title or description, job location, compensation history, and job performance."

- General Release and Waiver:  "If you decide to reject this offer, your employment still will end . . . ."

(*Id.* at PageID 67–68.)

The majority of the claims in this suit, however, are not about Ansley's employment or termination from employment.  With the exception of a tortious interference subclaim discussed below, Ansley is not suing for wrongful termination.[2]  He is seeking neither past nor future wages as damages, nor to be reinstated into employment with Diversified.  Rather, Ansley's alleges self-dealing by Defendants resulting in a breach of the fiduciary duties they owe as majority shareholders in a close corporation to the minority shareholders.  Ansley alleges that his termination was part of a scheme to oust him as a minority shareholder at a share price not equal to the true value of the shares so that he could not benefit in the sale of the corporation.  The majority of his claims, therefore, are not encompassed within the Release and Waiver provision.

---

[2]  Interestingly, courts have recognized claims by minority shareholder employees against the majority shareholders for termination of employment when the termination is initiated for the majority shareholders' profit or gain and without legitimate business reasons.  *See Gigax v. Repka*, 83 Ohio App. 3d 615, 615 N.E.2d 644, 650 (2d Dist. 1992); *see also Crosby*, 548 N.E.2d at 221 (citing with approval a Massachusetts case whereby "majority shareholders breached their fiduciary duty to the minority by removing a minority shareholder from the payroll of a close corporation, which had never paid a dividend, and there was no legitimate business purpose for the removal").

For these reasons, the Court will deny judgment to Defendants on Ansley's claims, with the exception of the tortious interference subclaim, on the basis that they are barred by the Release and Waiver in the Separation Agreement.[3]

Regarding the tortious interference claim, Ansley alleges broadly that "[a] contract of employment and a business relationship and prospective advantage in the ownership of a minority interest in Diversified existed between Ansley and Diversified." (Doc. 3 at PageID 38.) He further alleges that "Defendants intentionally and improperly acted to procure the termination of this contract and relationship without any legal justification." (*Id.* at PageID 39.) Therefore, Ansley alleges at least in part that Defendants wrongfully terminated his employment. As such, this tortious interference subclaim is barred by the Release and Waiver.

**B.     Pleading Fraud with Particularity**

Turning to the next argument, Defendants contend that they are entitled to judgment on the fraud, fraudulent inducement, and breach of fiduciary duty claims because Ansley did not plead the claims with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. The Court reads the Complaint to allege that Defendants withheld information regarding the true value of the corporate shares—information concerning their activities to enhance Diversified's value and to negotiate for a sale or merger—and falsely stated that only employees could own shares in the company. The purposes of Rule 9(b) are to alert defendants to the particulars of their alleged misconduct so they can respond properly and to narrow the scope of potential discovery issues so as to prevent fishing expeditions. *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466–67 (6th Cir. 2011). The Court is convinced here, based on the parties'

---

[3] Because the Court finds that Ansley's claims are not encompassed by the Release and Waiver, the Court need not examine his alternative arguments that the Release and Waiver cannot be enforced because it was fraudulently procured.

filings and statements to the Court, that Defendants understand the nature of the allegations of wrongdoing against them. Rule 9(b) has been satisfied. The Court will not dismiss the fraud, fraudulent inducement, or breach of fiduciary duties claims for lack of particularity.

## C. Tortious Interference and Civil Conspiracy Claims

Finally, Defendants argue that Ansley's tortious interference and civil conspiracy claims fail as a matter of law. In the tortious interference subclaim that remains, Ansley alleges that Defendants tortiously interfered in his relationship with Diversified as a minority shareholder. "Tortious interference with a business relationship requires that a defendant interfere with the relationship of the plaintiff and a third party." *Kuvedina, LLC v. Cognizant Tech. Sols.*, 946 F. Supp. 2d 749, 757 (S.D. Ohio 2013). "Therefore, a claim for tortious interference of business relationships can only be asserted against 'outsiders' or 'strangers to the business relationship,' not [against] employees of a party to the relationship acting within [their] scope of employment." *Id.* (citations omitted). The Sixth Circuit concluded in a tortious interference case arising under Michigan law that the interests of a controlling shareholder "are unified with the interests of the controlled corporation." *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co. Ltd.*, 475 F.3d 783, 801 (6th Cir. 2007). It follows that Defendants, the majority shareholders in Diversified, cannot be considered outsiders or strangers to Diversified's relationships for purposes of the tortious interference claim. Therefore, Defendants are entitled to judgment on the tortious interference claim.[4]

---

[4] The Court held earlier that the tortious interference subclaim against Defendants as the officers who terminated Ansley's employment is barred by the Release and Waiver in the Separation Agreement. The subclaim also is barred on the alternative ground that Dr. Cooke and Dr. Landon are not outsiders to Ansley's employment relationship with Diversified.

Defendants make a similar argument seeking judgment on Ashley's civil conspiracy claim. Ansley alleges Defendants acted in concert "to injure Plaintiff Ansley in his property." (Doc. 3 at PageID 41.) Defendants argue that the claim is barred by the intra-corporate conspiracy doctrine which holds that it takes two or more persons to have a conspiracy and that a corporation, acting through one or more agents, cannot conspire with itself. *See Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 765 n.6 (6th Cir. 2010). Additionally, "employees of a corporation or governmental entity cannot conspire among themselves as they are not two separate 'people' but rather they are treated as one entity." *Easterling v. Crawford*, No. 3:13-CV-430, 2014 WL 428931, at *12 (S.D. Ohio Feb. 4, 2014), *supplemented*, 2014 WL 667638 (Feb. 20, 2014), and *report and recommendation adopted*, 2015 WL 1476402 (Mar. 31, 2015); *see also Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008) (stating that "where all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy") (citation omitted). Dr. Cooke and Dr. Landon, whether viewed as officers and employees of Diversified or as majority shareholders of Diversified, are members of the same collective entity and cannot conspire together as a matter of law. *Cf. In re: George A. Bavelis*, No. 10-2508, — B.R. —, 2017 WL 737077, at *28 (Bankr. S.D. Ohio Feb. 22, 2017) ("[A] a company and its sole owner are not considered separate parties for purposes of conspiracy . . . ."); *Dumas v. Baldwin House Mgmt.*, No. 1:14-cv-12666, 2015 WL 630820, at *3 (E.D. Mich. Feb. 12, 2015) (applying intra-corporate doctrine to bar conspiracy claim against an employer, its employees, and its owner). Defendants are entitled to judgment on the civil conspiracy claim.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings (Doc. 7) is **GRANTED IN PART AND DENIED IN PART**. The Court grants judgment to Defendants on the tortious interference and civil conspiracy claims only.

**IT IS SO ORDERED.**

Dated this 5th day of September, 2017.

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge